TUCKER, Judge.
In this suit the plaintiff, Louis F. Mag-gio, seeks to recover property damages to his 1967 model Ford Galaxie automobile in the sum of One Thousand Two Hundred Eighty-one and 72/100 ($1,281.72) Dollars from the defendant, Parish of East Baton Rouge. On May 11, 1969 plaintiff’s minor son, Charles Ronald Maggio, with Laura Elizabeth Bourgeois as a passenger, was driving the said Ford car in a northwesterly direction on a parish road, known as Harrell’s Ferry Road, when he was confronted with a chuck hole, extending from the shoulder of the road to a point near the mid-line thereof. Young Maggio, in attempting to avoid the hole in the roadway, swung his car to the left and missed the hole with the front end, but the right rear wheel caught a portion of the hole with the result that the driver lost control of the vehicle, ran off the road and struck a tree adjoining the right of way with the left rear portion of the automobile. The chuck hole was estimated to be some three to four feet in diameter and from three to seven inches in depth.
The lower court awarded judgment in favor of the plaintiff, and from this judgment defendant has suspensively appealed.
The defendant takes exception to the decision of the trial court, principally urging that in the event the unsound condition of the road was “patently dangerous”, the condition should have been observed by a reasonably careful and ordinarily prudent driver; that the Parish was not notified, nor did it have actual of constructive notice, of the existence of the alleged hole; and if the Parish did receive such notice, that it corrected such condition and made the necessary repairs within a reasonable length of time thereafter; in the alternative, the defendant claims that young Mag-gio, the driver, was contributorily negligent in that he knew or should have known of the defect in the roadway.
The evidence abounds to the effect that the chuck hole created a dangerous and hazardous condition for motorists traveling northwesterly on the Harrell’s Ferry Road. The record shows the asphalt surface was applied to the roadway in 1952, and, being somewhat aged timewise, it required relatively more upkeep and maintenance than some of the more recently black-topped roads.
. One of the questions raised by the defendant needing consideration is that which deals with the duty of young Maggio to have discovered the peril, if it were of the magnitude claimed by the plaintiff, in order that he might have taken evasive action sufficiently in advance to avoid the hazard created by the hole. In this regard the record shows that the driver Maggio had rounded a curve, the end of which was variously estimated to be from 50 to 300 feet southeasterly from the said chuck hole. Young Maggio estimated he was between 10 and 15 feet from the defect when he initially saw the hole, and that his rate of speed was between 40 and 45 miles per hour. At the 45 mile per hour figure the Ford automobile would traverse 66 feet per second. State Trooper Herbert H. Hamilton could find no indication in his investigation of excessive speed or other driver wrongdoings on the part of young Maggio when the accident occurred. Considering the reasonable and lawful speed, which is not actually in dispute, of the Ford automobile and the relatively short distance the vehicle traveled from the end of the curve to its confrontation with the hazardous hole, we are unable to say that young Mag-gio did not discharge himself as a careful, reasonable and prudent driver of the Ford car in his failure to observe the defect in time to avoid the accident.
Next the appellant contends that it did not have notice, either actual or constructive, of the danger posed to motorists by the existence of the hazardous defect. Defense witnesses, George M. Fairchild, superintendent of rural streets and roads for the Parish, and Hiram O’Neal, foreman for the same division, testified that their initial knowledge of the defect came by *74 way of notification on the day of the subject accident. Fairchild and O’Neal further testified that they had traveled the said road together in both directions within one week before the subject accident, and that they had not observed the defect in question which would pose a danger to the motoring public. On the other hand, Mrs. Deanne S. Webb, a disinterested witness, who lived on the Harrell’s Ferry Road, adjacent to the subject chuck hole, testified that the defect had existed for three to four weeks in advance of the accident, and that she had notified the Parish Department of Public Works by telephone about the defect on two different occasions' — the first time, two weeks in advance of the accident, and the second time, one week before the accident. It is not disputed that this department is the proper agency to be notified of defects in the parish roads. The record does not reveal why these reports of Mrs. Webb did not come to the attention of Fairchild and O’Neal. Mrs. Webb’s testimony with respect to her telephoned notifications stands uncontra-dicted, and, though appellant contends that the uncorroborated testimony of one witness is insufficient to import actual notice to the parish of the defect, counsel does not favor us with any citation of law or the jurisprudence in support of this position. We are in accord with the holding by the lower court that, absent any cogent reason for rejecting Mrs. Webb’s testimony on this count, the parish had actual notice of the perilous defect embodied in the relatively extensive chuck hole.
The landmark case of St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964) sets forth the precepts of law which control a case such as the instant one, to-wit:
" * * * (1) that the unsound condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent person, and (2) that the municipality had notice, either actual or constructive of the existence of the defect and failed within a reasonable time to correct it. 'In other words, if the defect is slight, there can be no recovery and, even if it is patently dangerous, the municipality is not responsible unless it has had actual notice of it or unless the condition has been permitted to remain in its dangerous state for such a length of time as to warrant the conclusion that the municipality is negligent in failing to discover and correct it.’ ” (citations omitted)
Other cases, including St. Paul, recite the principle that the facts and circumstances of each individual case control in determining whether, for the purposes of imposition of liability upon a parish, a road defect was dangerous or in the nature of a trap. See Bustamente v. City of New Orleans, 175 So.2d 404 (La.App. 4th Cir.1965), Carter v. State Fire & Casualty Company, 209 So.2d 510 (La.App. 2d Cir.1968).
We have already concluded that the chuck hole was a major defect which created a dangerous and perilous condition, and this conclusion is buttressed by the photographic evidence in the record. The defendant also had actual notice of the defect on two different occasions, the initial notice to the Parish coming from Mrs. Webb.
Perhaps the major problem with which we are confronted is whether or not the defendant delayed an unreasonable length of time in correcting the subject defect, since the evidence shows that there are some 400 miles of parish roads for which the Parish is charged with the responsibility of upkeep and maintenance.
There is no precise formula for making the foregoing determination. However, in the case of Castrinos v. City of New Orleans, 172 So.2d 357 (La.App. 4th Cir.1965) the Court held that actual notice of seventeen (17) days to the city about a protruding manhole in advance of a motorist colliding with the dangerous defect gave the city sufficient time to make the necessary correction, and the city’s failure to make the correction within the seventeen *75 day period from notice established negligence on its part in failing to make the roadway safe within a reasonable length of time after notice.
We believe, as did the lower court, that, in view of the fact the defendant received fourteen (14) days actual notice of the dangerous defect, and since the process of filling up the chuck hole to make it level with the road surface required only a part of one day, the negligence of the defendant has been established in its waiting an unreasonable length of time to correct the hazardous condition created by the hole.
The evidence does not support a holding of contributory negligence on the part of young Maggio.
We are unable to discern manifest error on the part of the trial court in its finding of fact or the conclusions reached therefrom.
The judgment of the lower court is affirmed at the costs of the defendant-appellant.
Affirmed.