HUMPHRIES, Judge.
Plaintiff appealed from an adverse judgment in her action against the State of Louisiana through the Department of Highways for injuries sustained in an accident caused by alleged hazardous conditions of the shoulder of the road. The plaintiff has abandoned all of her claims against all parties other than the Department of Highways, State of Louisiana.
We agree with the findings of the trial judge, his application of the law, affirm his decision and adopt his written reasons for judgment as the opinion of this court.

"REASONS FOR JUDGMENT”

“These suits were filed against the State Highway Department and one against Allstate Insurance Company, for damages resulting from an automobile accident which occurred on Louisiana Highway 10 in Evangeline Parish. The State Highway Department and Allstate denied liability and trial with cases consolidated was had on November 5, 1974.
The facts reveal that an automobile driven by one Chaney, in which plaintiff, Carol Mann, Roberta Belsome, and Louis Papil-lion were passengers, was proceeding in a westerly direction on La. 10, and that another station wagon driven by plaintiff Jack Karam, was proceeding in an easterly direction on Louisiana Highway 10. As the Chaney automobile entered a curve, it ran off of the hard surfaced portion of the highway onto the shoulder, at which time, as the driver attempted to pull back onto the highway, lost control and ran across the highway into the east bound lane where an accident occurred between the two vehicles, causing the death of Roberta Belsome, Louis Papillion, the driver Chaney, and serious personal injuries to Carol Mann and to Jack Karam.
The evidence further reveals that renovation of this highway was completed in 1967, and that it is a hot-mix type, two lane, blacktop highway, and that at the place of the accident, it is twenty feet wide, and that at the time of the accident the traffic signs warning of a curve ahead were in place.
The testimony shows that there was a so-called “rut” on the side of the highway where the Chaney vehicle ran off the road. However, the testimony, and the photographs filed in evidence show that the depth of this rut varies from two to six inches below the top of the hard surfaced portion of the highway. The evidence further shows that the shoulder at that point is graveled. The evidence is not clear as to the length of the rut or ruts.
Foster Whittington, who was the Maintenance Superintendent for the Department of Highways, testified that he rides all highways of the Parish at least once a *511 week. He further testified that ruts such as this one are constantly occurring, and that the highway is too narrow. He testified that this curve is not the only bad curve in that highway. Trooper Charlie Manuel testified that the rut took up the major portion of the sharpest point of the curve, and that the curve is sharp enough to require a slow down. He testified that the rut was about the width of an automobile tire. Trooper Manuel further testified that he did not know where the Chaney vehicle entered the rut, he does not know where the Chaney vehicle left the road, but there was a skidmark leaving the rut going to the point of impact approximately seventy-five feet away, and that the Chaney car was sliding sideways at the time.
As for the manner in which Chaney was driving his automobile at the time of the accident, the only testimony on that is that of plaintiff, Carol Mann, whose testimony shows that Chaney was driving in a grossly careless and reckless manner, and at a high rate of speed before and at the time that he entered the curve.
John P. Smith, Jr., who lives near the scene of the accident, testified that the rut had been there for approximately two months, and that he knows personally that there were frequent accidents at this particular curve. Several other witnesses testified that they had seen the rut there on and off.
There was no evidence introduced to show that the structure, design and/or engineering of this particular curve was such as to make it a dangerous curve per se. On the contrary, John Boagni, the Chief Construction and Maintenance Engineer for the State Department of Highways at the time of trial, who was previously Chief Engineer for the Highway District in which this highway is located, testified that there.was a traffic count of approximately 1100 vehicles using this highway daily on an average day, and that the Department had received no complaints about this curve. As a matter of fact, Mr. Boag-ni was the Project Engineer on Louisiana Highway 10 at the time when the project of reconstructing this highway was done in 1967.
The Court is sympathetic with the plaintiffs with regard to both those two who were severely injured and to the survivors of those who were killed as a result of the accident. However the Court cannot get around the recent case of Laborde v. La. Dept. of Highways, 300 So.2d 579, La. Court of Appeals, Third Circuit. If anything, the Laborde case was a stronger case for the plaintiffs than is the case at bar. Laborde apparently involved a situation where there was an erosion and a resulting hole in the traveled portion of the highway, and yet because there was sufficient room in plaintiff’s lane of traffic for plaintiff to pass without striking the hole, the Court denied plaintiff’s recovery. The pertinent language in the Laborde case is cited below.
“The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir. 1963); Mistich v. Matthaei, 277 So.2d 239 (La.App. 4 Cir. 1973); St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964).”
I find no causal connection between the so-called highway defect of which the *512 plaintiffs complained and the accident. The defect complained of is not that kind of a hazard which is patently or obviously dangerous to a reasonably careful and ordinarily prudent driver. The sole and proximate cause of the accident was the negligence of decedent Chaney, and for that reason the suits of the plaintiffs against the Department of Highways should be dismissed at their costs.”
The pictures filed in evidence reflect this area to be an ordinary curve that one would see while driving on any of the state’s bituminous roadways with the usual dirt and gravel shoulder with ruts and water in the ruts as one would ordinarily expect. During argument counsel for the plaintiff admitted that there was no direct proof in the evidence that the rut in anywise caused or contributed to this accident. He agreed that this court would have to assume or infer that the rut caused the accident. There is nothing in the record that permits us to make this assumption of this inference.
The plaintiff is cast for all costs of this appeal.
Affirmed.